UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LACI BLANCHARD** | **CA:** 24-534 |
| **vs.** | **JUDGE:** |
| **SBS ENERGY SERVICES, LLC** | **MAG. JUDGE:** |

## 28 USC 1746 UNSWORN DECLARATON UNDER PENALTY OF PERJURY OF ROBERT BRAY, JR.

Robert Bray, Jr. hereby testifies via unsworn declaration, as follows:

1.

I am of the age of majority, of sound mind, and a resident of Houma, Louisiana. I am the founder and President of SBS Energy Services, LLC, a Louisiana limited liability company formed on May 30, 2017, with its registered office in Houma, Louisiana. The lawsuit filed by Laci Blanchard in East Baton Rouge Parish incorrectly identifies the entity as SBS Energy Company, LLC.

2.

I have personal knowledge of the facts contained in this declaration and am competent to testify to these facts.

3.

I was personally involved in the work assignments of all SBS personnel who were working on the Sanare job at the time of the death of Ronnie Blanchard ("the job of incident").

4.

I have also been personally involved in the work assignments of all SBS personnel throughout the history of the company.

5.

SBS is an oilfield services company that provides snubbing and coil tubing services to oilfield leaseholders on land and on platforms on the Outer Continental Shelf.

6.

SBS does not now and has never owned or operated vessels and has never assigned its employees to work aboard any vessels as members of the vessel crew. SBS has never employed licensed mariners. SBS does not work directly for any vessel owners or operators.

7.

The vast majority of the typical SBS employee's work history consists of land work and platform work, easily exceeding 70%. To the extent that an SBS employee performs work on a liftboat or other vessel that is positioned alongside a platform well, the work is not vessel work but relates specifically and wholly to the platform wellhead.

8.

SBS has never in its history been contracted to work for a vessel owner or operator. The oil company leaseholder hires SBS to provide workover crews for a certain phase of the drilling process, and these crews are temporarily assigned to do work on the wellhead, whether this occurs on land or on platforms.

9.

For the job of incident, Sanare Energy Partners, LLC hired SBS to assist in the installation of a hydraulic workover unit on a Sanare wellhead at Ship Shoal 60 on the Outer Continental Shelf and to assist in the permanent abandonment of the well. This wellhead is a fixed platform-like structure embedded into the Gulf. It has no motive power, no navigational capabilities, no use as a vessel whatsoever.

10.

Sanare hired AllCoast to provide a liftboat that would serve as living quarters for SBS and other workers and provided a work platform because the wellhead structure could not accommodate all the equipment necessary for the workover job.

11.

Ronnie Blanchard previously worked for SBS but had a break in employment of more than six months. He returned to work for SBS on March 20, 2022 and deployed to the Sanare job site in Ship Shoal 60 on March 22, 2022. His job title was operations supervisor, but on this job he was working as an operator. He worked two full days on the day shift, March 23 and 24, and then his accident happened on the morning of March 25, 2022.

12.

During his short time on the job, Mr. Blanchard spent less than 30% of his time working on the lift boat. The vast majority of his 2.5 days of work time, far more than 70%, was spent on the wellhead structure as the crew assembled the hydraulic workover unit, which assembly was still in progress when the accident happened and the structure collapsed into the Gulf of Mexico, resulting in the death of Mr. Blanchard. His work at the time of his death was on the platform and not on the vessel.

13.

The SBS crew, including Mr. Blanchard, were assigned to work on the Sanare wellhead jacket. This was a temporary assignment projected to last two weeks. SBS had no involvement in hiring the AllCoast liftboat and no involvement in manning or operating the liftboat. Work by SBS on the liftboat was limited to incidental duties that facilitated the work on the wellhead platform, namely, housing support equipment that

did not fit on the platform. Mr. Blanchard slept and ate on the liftboat but had minimal work time on the liftboat, far less than 30%. To the extent he worked on the liftboat, it was incidental to and in support of work on the platform.

14.

The SBS crew, including Mr. Blanchard, had no allegiance to the AllCoast liftboat. They did not report to or take instructions from the liftboat captain or crew. They only took instructions from Sanare personnel, the SBS supervisor on site, Kelvin Brereton, or from their onshore supervisor, me (Robert Bray, Jr.). The SBS crew, including Mr. Blanchard, reported directly to me in each phase of their work and sent daily reports to me that documented what they had done.

15.

The work duties of the SBS crew, including Mr. Blanchard, were devoted entirely to the platform and not the AllCoast liftboat, which was there solely to provide living quarters and a platform for equipment that could not fit on the wellhead platform. The SBS crew arrived on site via a crew boat hired by Sanare. The AllCoast liftboat was also affixed to the seabed by that time and did not move during the time that the SBS crew was on site. It functioned as a platform alongside a platform for the entire time that the SBS crew were on the job.

16.

If Mr. Blanchard had lived and had remained an employee of SBS, he most likely would have rotated among many different land jobs and platform jobs, with any vessel-related work being incidental to and in support of platform jobs. He would never have been assigned to a vessel and would never have served as a member of a vessel's crew.

THUS DONE AND SIGNED this 29th day of Febuary 2024 UNDER PENALTY OF PERJURY.

_____
ROBERT BRAY, JR.

PRESIDENT, SBS ENERGY SERVICES, LLC