UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LACI N. BLANCHARD** | * | **CIVIL ACTION NO. 2:24-cv-534** |
| | * | |
| **Plaintiff,** | * | **SECTION I** |
| | * | |
| v. | * | **JUDGE LANCE M. AFRICK** |
| | * | |
| **SBS ENERGY SERVICES, LLC and** | * | **DIVISION 5** |
| **KINSALE INSURANCE COMPANY** | * | |
| | * | **MAGISTRATE JUDGE** |
| **Defendants** | * | **JANIS VAN MEERVELD** |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**KINSALE INSURANCE COMPANY'S
MEMORANDUM IN SUPPORT OF
RULE 12(B)(6) MOTION TO DISMISS**

Laci Blanchard sued SBS Energy Services, LLC ("SBS"), after Ronnie Blanchard died while working offshore on equipment associated with an offshore worksite. Laci Blanchard also sued Kinsale as SBS's insurer. However, as a matter of law, there is no insurance coverage for the claims in the Original Petition under the Environmental Combined Liability Policy issued by Kinsale to SBS. First, the Marine Liability Exclusion—which applies when claims might have been covered under one or more of the marine liability policies listed in the exclusion if they had been purchased—clearly applies here. Second, the Watercraft Exclusion applies because the L/B SWORDFISH, the boat on which Blanchard was living and working, constitutes a "watercraft" under the Policy.

**I.      Nature and Stage of the Proceeding.**

On February 5, 2024, Laci Blanchard filed a lawsuit against SBS and Kinsale in state court that was subsequently removed to federal court by SBS. (Doc. 1.) As mentioned in the Notice of Removal, this is not the only lawsuit arising out of the death of Robbie Blanchard. For

example, Kinsale previously filed a declaratory judgment action against Sanare, the company that chartered the vessel called the L/B SWORDFISH that was associated with this accident, and on December 1, 2023, that case was transferred *sua sponte* from the Eastern District of Louisiana to the Southern District of Texas, No. 4:23-cv-04680. But this is the only lawsuit in which Laci Blanchard asserts that the policy issued by Kinsale provides coverage to SBS for Blanchard's claims against SBS.

## II.     Statement of Facts.

The Petition states that Kinsale is being sued because of the insurance policy that Kinsale issued to SBS. (Doc. 1-2, ¶ 17.) Specifically, Kinsale issued to SBS Policy No. 0100158459-0 (the "Policy") (attached as Exhibit A to this motion).[1] The Policy was in effect from August 1, 2021, to August 1, 2022.

The arguments in this motion are based on two different exclusions in the Policy. First, the Policy includes a "Marine Liability" exclusion. This exclusion states:

> This insurance does not apply to any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury", including but not limited to any contractual liability that might be covered under any:
>
> 1.     Hull, Protection & Indemnity Policy (P&I);
>
> 2.     Marine Operator's Legal Liability Policy;
>
> 3.     Charterer's Legal Liability Policy; or
>
> 4.     Other similar marine insurance coverage on owned, operated, chartered or brokered watercraft.

---

[1]     For ease of citation, the pages of the Policy in Exhibit A are numbered sequentially at the bottom right "Page 1 of 91" to "Page 91 of 91." The copy of the Policy attached as Exhibit A has certain confidential information redacted.

> This exclusion applies regardless of whether or not such insurance is collectable, has been purchased, is in force or its limits of insurance are available.[2]

Thus, there is no coverage for liability that might have been covered by a marine liability insurance policy—regardless of whether SBS actually purchased such a policy.

Second, the Policy contains an "Absolute Auto, Aircraft and Watercraft" exclusion. This exclusion states:

> This insurance does not apply to:
>
> \* \* \*
>
> g. **Aircraft, Auto or Watercraft**
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft. Use includes operation and "loading or unloading" and the handling and placing of persons, by an insured, into, onto or from an "auto".
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.[3]

Thus, there is no coverage for any bodily injury arising out of the use of a watercraft.

### III. Governing Law.

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." On a motion to dismiss, all well-pleaded facts are accepted as true. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). "[O]nly a complaint that states a

---

[2] The Marine Liability exclusion is located at page 72 of 91 of Exhibit A.
[3] The Absolute Auto, Aircraft and Watercraft exclusion is located at page 56 of 91 of Exhibit A.

3

plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

Moreover, "when considering a Rule 12(b)(6) motion, a court may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims." *Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 340 (5th Cir. 2011). Thus, as this Court has recognized, when (as here) a plaintiff references an insurance policy in a petition or complaint and the plaintiff seeks coverage under the policy, then the insurance policy can be attached to a motion to dismiss and considered on a Rule 12(b)(6) motion to dismiss. *Fontenot v. Great Am. Assurance Co.*, No. CV 23-2062, 2023 WL 6065152, at *1 n.6 (E.D. La. Sept. 18, 2023).

A federal court sitting in diversity applies state substantive law. *Block v. Tanenhaus*, 867 F.3d 585, 589 (5th Cir. 2017) (*citing Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). An insurance policy is a conventional obligation that constitutes the law between the insured and the insurer, and the agreement governs the nature of their relationship. La. C.C. art. 1983. The policy is a contract and thus must be construed employing the general rules of interpretation of contracts. *Supreme Servs. & Specialty Co. v. Sonny Greer, Inc.*, 958 So. 2d 634, 638-39 (La. 2007); La. C.C. arts. 2045-2057. It is well settled that unless a statute or public policy dictates otherwise, the insurer may limit liability and impose reasonable conditions or limitations upon the insureds. *Supreme Servs.*, 958 So. 2d at 638-39. As such, an unambiguous provision limiting liability must be given effect. *Id.* at 639. Moreover, "freedom to contract" is an "important public policy in Louisiana," and therefore courts will enforce the provisions in an insurance policy issued to a commercial entity. *Creekstone Juban I, LLC v. XL Ins. Am., Inc.*, 282 So. 3d 1042, 1050 (La. 2019).

4

IV.     **Argument.**

The Policy provides coverage for certain types of damages and excludes coverage for other types of damages. It does not provide coverage for damages when an employee of SBS is injured or dies while working offshore. The Policy makes that clear in two different exclusions, either of which is a basis for ruling that there is no coverage here.

A.     **Marine Liability Exclusion.**

The first reason that there is no coverage here is the Marine Liability Exclusion. As noted above, the Marine Liability Exclusion provides that there is no coverage for any bodily injury "that might be covered under any" of four categories of marine liability insurance policies:

1. Hull, Protection & Indemnity Policy (P&I);
2. Marine Operator's Legal Liability Policy;
3. Charterer's Legal Liability Policy; or
4. Other similar marine insurance coverage on owned, operated, chartered or brokered watercraft.[4]

This exclusion also states: "This exclusion applies regardless of whether or not such insurance is collectable, has been purchased, is in force or its limits of insurance are available."[5]

The four categories of marine liability policies listed in the exclusion are all policies of marine insurance that are designed to respond to personal injury or death claims by personnel working offshore. *See* Robert T. Lemmon, II, *Allocation of Marine Risks: An Overview of the Marine Insurance Package,* 81 Tul. L. Rev. 1467 (June 2007) (cited as "Lemmon"). The first policy identified in the exclusion is a Hull, Protection & Indemnity Policy (P&I). A P&I Policy generally provides coverage for liability of a vessel owner in its capacity as a vessel owner when

---

[4]     The Marine Liability exclusion is located at page 72 of 91 of Exhibit A.
[5]     *Id.*

5

personal injury and death are caused by its vessel. *Id.; see also* La. R.S. § 22:47(13)(e) (defining "Marine protection and indemnity insurance" as providing "coverage for any legal liability assumed by an insured for loss, damage, or expense incident to ownership, operation, chartering, maintenance, use, repair, or construction of any vessel, craft, or instrumentality in use in ocean or inland waterways, including liability of the insured for personal injury, illness, or death or for the loss of or damage to the property of another person . . . .")." The second and third policies identified in the exclusion are a Marine Operator's Legal Liability Policy and a Charterer's Legal Liability Policy. These two policies provide similar coverage to that of P&I but for circumstances where—as here—the operator of the vessel against which liability is alleged is not also the owner of the vessel. Lemmon, *supra*, at 1488; *Randall v. Chevron U.S.A.*, Inc., 788 F. Supp. 1398, 1404-05 (E.D. La. 1992). And the fourth item listed in the exclusion is a catch-all for other types of marine liability insurance that could have been purchased: "Other similar marine insurance coverage on owned, operated, chartered or brokered watercraft." (Doc. 1-3, p. 72 of 91). The point is that the Kinsale policy is not a marine liability policy. If that type of liability coverage was desired, it had to be purchased separately.

      The exclusion states that it applies whenever the liability might have been covered under a marine liability policy. There is no requirement that the policy be purchased by SBS. For example, if SBS was doing work for a marine charterer, SBS might insist that it be added as an additional insured to a Charterer's Legal Liability Policy that was purchased by a charterer. And there is also no requirement that the marine liability coverage be purchased by anyone. In other words, an insured cannot expand coverage under Kinsale's Policy by declining to purchase marine liability coverage from another insurer. By using this broad language, the exclusion makes it clear that in any circumstance in which a liability might have been covered by a marine

liability policy of any type, that is not the type of coverage that Kinsale provided under this policy.

The clear language of this exclusion plainly applies here. The claims arise out of Blanchard's death while working offshore. As such, the claims not only "might be covered," which is all that is required for coverage to be excluded under the Kinsale Policy, but almost certainly would have been covered under one or more of the marine liability policies listed in this exclusion. These are policies designed to respond to marine personal injury and death liabilities. Lemmon, *supra*. Clearly, Blanchard's injury is the type of claim that "might" be covered under one of these types of marine liability policies that someone could have purchased.

Courts routinely exclude coverage for injuries related to marine liability when a policy contains a marine liability exclusion. For example, in *Farrell Lines, Inc. v. Ins. Co. of N. Am.*, 789 F.2d 300 (5th Cir. 1986), a longshoreman was injured when he was in a tractor-trailer and attempting to load a shipping container onto a vessel. An insurance company issued a Comprehensive Liability Policy that contained a marine liability exclusion "which stated that the policy did not cover 'any occurrence or accident which is or would be covered in whole or in part under Protection and Indemnity policy of Marine Insurance ....'" *Id.* at 304. The district court held that there was no coverage in light of the exclusion, and the Fifth Circuit affirmed, stating that "it cannot be accepted that the risk arising from longshoreman Glasper's injury would lie outside the coverage afforded by" a marine liability policy. *Id.*

Citing and following *Farrell Lines*, a district court in *In re Athena Const., L.L.C.*, No. CIV.A. 06-2004, 2008 WL 3153038 (W.D. La. Aug. 4, 2008), found that there was no coverage in light of a marine liability exclusion that excluded coverage for any injury that might be recoverable under the same types of policies that are identified in the exclusion at issue in this

7

case.[6] In that case, there was an explosion resulting in injuries when a vessel collided with a pipeline. The court cited *Farrell* and found the exclusion applicable. *Id.* at *4.

Similarly, in *In re Antill Pipeline Const. Co., Inc.*, No. CIV.A. 09-3646, 2013 WL 64609 (E.D. La. Jan. 4, 2013), there was a vessel allision resulting in the death of five people on board, and the question was whether an excess commercial liability policy issued by Chartis provided coverage. The Chartis policy had a marine liability exclusion that stated: "This insurance does not apply to any marine liability which includes, but is not limited to, the following:" followed by a listing of numerous policy types including "Charterer's Liability," "Protection and Indemnity Liability," and "Ship Builders Liability."[7] The Court held that the marine liability exclusion clearly excluded coverage under the Chartis policy for the injury, stating that "the Court finds as a matter of law that any resulting liability is necessarily a 'marine' one under either maritime or Louisiana law, regardless of how Antill's direct claims against Tarpon are presented." *Id.* at *1.

A marine liability policy—had it been purchased—clearly would have applied to the claims arising out of the bodily injury and death of Blanchard. The Kinsale policy is not a marine liability policy, and to the contrary it excludes the type of coverage that is provided by a marine liability policy. Thus, there is no coverage under the Policy issued by Kinsale for this type of claim, and Blanchard has failed to state a claim against Kinsale upon which relief can be granted.

---

[6] Specifically, the exclusion at issue in that case stated: "This does not apply to any claim, injury, loss or damage that may be recoverable under any Hull, Protection & Indemnity (P & I) policy including claims for contractual liability; Marine Operators Legal Liability; Charterers Legal Liability, or, any similar marine insurance coverages on owned, operated, chartered, or brokered watercraft regardless of whether such insurance has been purchased, is in force or the limits of liability are available." *In re Athena Const., L.L.C.*, No. CIV.A. 06-2004, 2008 WL 3153038, at *2 (W.D. La. Aug. 4, 2008).

[7] *See In re Antill Pipeline Const. Co., Inc.*, No. CIV.A. 09-3646, 2012 WL 5423709, at *2 (E.D. La. Nov. 6, 2012).

### B. Watercraft exclusion.

A second and independent reason that there is no coverage is that there is a watercraft exclusion in the Policy. This exclusion applies to any bodily injury "arising out of the … use . . . of any . . . watercraft."[8]

"A watercraft is commonly understood to be a boat, a vessel, or some other apparatus that goes about on the water." *Viator v. Dauterive Contractors, Inc.*, 831 So. 2d 407, 408 (La. App. 5 Cir. 2002). Blanchard was living and working on the L/B SWORDFISH, which is, of course, a type of boat. (Doc. 1-2, ¶ 8). Thus, it is a watercraft.

Blanchard was injured while working offshore, and his injury clearly arose out of the use of the watercraft. The Petition alleges that Blanchard slept on the L/B SWORDFISH and performed "a substantial amount of his work" on the L/B SWORDFISH. (Doc. 1-2, ¶ 9.) Thus, there was a bodily injury arising out of the use of a watercraft. The watercraft exclusion excludes this type of coverage.

The Louisiana Supreme Court has confirmed that a watercraft exclusion is applicable in these circumstances. *Henry v. S. Louisiana Sugars Co-op., Inc.*, 957 So. 2d 1275 (La. 2007). In *Henry*, the Supreme Court found a watercraft exclusion applicable when a worker was injured as he slipped on a gangplank between a moored barge that was used as a dock and a cargo barge. Like here, the exclusion in that policy applied when there was a bodily injury "arising out of the ... use ... of any ... watercraft ...." *Id.* at 1278. The Supreme Court held: "The watercraft exclusion in the Audubon CGL policy unambiguously denies coverage for the alleged injuries sustained by the Henry plaintiffs in the main demand." *Id.* at 1280.

---

[8] The Absolute Auto, Aircraft and Watercraft exclusion is located at page 56 of 91 of Exhibit A.

The federal Fifth Circuit has also applied the watercraft exclusion in circumstances like these. In *Holden v. U.S. United Ocean Servs., L.L.C.*, 582 F. App'x 271 (5th Cir. 2014), an employee of the named insured was injured while preparing to remove a gangway that led from a dock to a barge owned by the alleged additional insured. *Id.* at 272. The insurer for the named insured argued that no coverage was provided for the alleged additional insured because of a watercraft exclusion. The trial court agreed that there was no coverage, and the Fifth Circuit affirmed. In that case, the watercraft exclusion said that it applied when there was a bodily injury "arising out of the ownership or operation of any watercraft ...." *Id.* at 274.

Similarly, in *Johnson v. Seacor Marine Corp.*, 404 F.3d 871 (5th Cir. 2005), three individuals employed by the named insured on an insurance policy were injured while transferring between offshore platforms and a watercraft. *Id.* at 874. The insurance policy issued to the named insured had a watercraft exclusion that excluded coverage for a bodily injury "arising out of the ... use ... of any aircraft, 'auto' or watercraft ...." *Id.* at 874 n.1. The Fifth Circuit held that even if SEACOR, the entity sued by the employees, had additional insured status under the insurance policy issued to the named insured (the employer of the injured plaintiffs), there was still no coverage because of the watercraft exclusion. "The watercraft exclusion plainly excludes coverage to SEACOR." *Id.* at 877.

Here, the watercraft exclusion plainly excludes coverage. Thus, this is an independent basis to grant this motion because Blanchard has failed to state a claim against Kinsale upon which relief can be granted.

**V.  Conclusion.**

In the *In re Athena Construction* case cited above, the federal district court held that there was no coverage under an insurance policy because multiple exclusions applied including (1) a marine insurance exclusion and (2) a watercraft exclusion. The same is true here. Pursuant to

10

either exclusion, as a matter of law, the Policy provides no coverage for damages arising out of the bodily jury to Mr. Blanchard. Accordingly, Kinsale requests dismissal under Rule 12(b)(6) because the Petition fails to state a claim upon which relief can be granted.

        Respectfully submitted,

        */s/ Jeffrey E. Richardson*
        Jeffrey E. Richardson (La. #23273)
        jeff.richardson@arlaw.com
        Matthew C. Guy (La. #31182)
        matthew.guy@arlaw.com
        Adams and Reese LLP
        701 Poydras Street, Suite 4500
        New Orleans, Louisiana 70139
        Telephone: (504) 581-3234
        Facsimile: (504) 566-0210
        *Counsel for Kinsale Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2024, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel by operation of the Court's electronic filing system.

        */s/ Jeffrey E. Richardson*
        Jeffrey E. Richardson