EAST BATON ROUGE PARISH
Filed Feb 06, 2024 10:01 AM
Deputy Clerk of Court
E-File Received Feb 05, 2024 10:21 AM

C-743798
23

_____ JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE,

STATE OF LOUISIANA

NO._____                                                DIVISION_____

**LACI N. BLANCHARD,**
**Individually, and as next friend of W.B., the surviving minor child of**
**Ronnie P. Blanchard, Jr.,**

VERSUS

**SBS ENERGY SERVICES, LLC and KINSALE INSURANCE COMPANY**

FILED:_____                                _____

                                                        DEPUTY CLERK

## ORIGINAL PETITION

NOW INTO COURT through undersigned counsel comes LACI N. BLANCHARD, Individually, and as next friend of W.B., the surviving minor child of RONNIE P. BLANCHARD, JR. ("Plaintiffs"), complaining of Defendant SBS ENERGY SERVICES, LLC and KINSALE INSURANCE COMPANY and for cause of action would respectfully show the Court the following:

### I.

#### NATURE OF ACTION

1.      Plaintiffs' claims arise out of negligent conduct that caused serious injuries, and eventually death, to Mr. Ronnie P. Blanchard, Jr. ("Mr. Blanchard") while he was working offshore in the Gulf of Mexico. These claims are brought via this survival action for Laci N. Blanchard's injuries, suffering, and death, and via this wrongful death action for W.B.'s own damages from Mr. Blanchard's death.

### II.

#### JURISDICTION AND VENUE

2.      Plaintiffs bring these claims under the Jones Act and General Maritime law. In the alternative, if the Court determines the Jones Act and General Maritime law do not apply, Plaintiff brings these claims under Louisiana law and the substantial certainty exception under Louisiana law.

3.      Venue is proper in this Court pursuant to Article 42 of the Louisiana Code of Civil Procedure because, upon information and belief, Defendants were insured by Kinsale Insurance Company, a foreign insurance company, for all damages claimed by Plaintiffs.

4.      Because Defendants are joint obligors and Plaintiffs have brought claims against a foreign insurer, this Parish is also proper for claims made against all parties as joint obligors. *See* LA. CODE CIV. PROC. art. 73; *Scarbrough v. McDermott*, 2002-1235 (La. App. 4 Cir. 11/20/02); 833 So. 2d 436, 444.

### III.

#### PARTIES

5.      Plaintiff Laci N. Blanchard ("Mrs. Blanchard") is a resident of Louisiana. Mrs. Blanchard is the mother of W.B., a minor, and was at all material times the wife of Mr. Blanchard, deceased.

6.      Defendant SBS ENERGY COMPANY, LLC ("SBS") is a Louisiana limited liability company based in Houma, Louisiana. SBS may be served through its registered agent: William Sheffield at 72030 Live Oak Street, Covington, Louisiana 70433.

7.      Defendant KINSALE INSURANCE COMPANY is a foreign insurance company that insured Defendant SBS through a policy of liability insurance at the time of the incident. Defendant Kinsale is liable jointly, severally, and *in solido* with its insured, Defendant SBS, for Plaintiffs' alleged damages. Defendant KINSALE INSURANCE COMPANY can be served through any officer or director at its principal place of business: 425 West Capital Avenue, Suite 1800, Little Rock, Arkansas 72201. Or through its Chief Executive Officer, Michale P. Kehoe, at 2035 Maywill Street, Suite 100, Richmond, Virginia 23230.

### IV.

#### FACTS

8.      This lawsuit is necessary as a result of personal injuries and death suffered by Mr. Blanchard on or about March 25, 2022. On or about this time, Plaintiff was working for Defendant SBS as a Jones Act seaman, and assigned to the LB SWORDFISH, a vessel owned and operated by All Coast.

9.      Mr. Blanchard had just recently started a new job and spent the vast majority of his time working offshore, assigned to the LB SWORDFISH. Mr. Blanchard would sleep on the LB SWORDFISH and perform a substantial amount of his work on the LB SWORDFISH.

10.     At the time of the incident, Mr. Blanchard was working on equipment associated with an offshore worksite owned and/or operated by Sanare Energy. Specifically, Plaintiff was performing work associated with a blowout preventer and pipe jack assembly weighing approximately 120,000 pounds. While Mr. Blanchard was working, a portion of the equipment collapsed and toppled over into the ocean as it was being erected on a caisson in the Gulf of Mexico. Tragically, Mr. Blanchard was attached to the assembly at the time it collapsed and, as a result, was dragged and trapped below the surface of the water. He was caused to suffer tremendous fright and fear as he was dragged into the water and ultimately drowned. It was not until days later that search and rescue divers could locate and recover Mr. Blanchard's body from beneath the waters of the Gulf of Mexico.

## V.

### CLAIMS

A.   **Negligence and Substantial Certainty against Defendant SBS.**

11.     Plaintiffs' repeat and re-allege each allegation contained above.

12.     Plaintiffs' claims against Defendants arise under the Jones Act and General Maritime law.[1]

13.     The proximate, contributing, and legal causes of Plaintiffs' injuries and Mr. Blanchard's death include the negligence and reckless conduct of Defendants that made Plaintiffs' injuries and the underlying incident substantially certain to occur. Mr. Blanchard was not at fault.

14.     Defendant SBS was negligent and for the following non-exclusive reasons:

   a.   Violations of OSHA regulations, including but not limited to 29 C.F.R. 1926 and 29 C.F.R. 1910, among others;

   b.   Failing to recognize the work being performed at heights on unsafe equipment in question as a hazard in both the planning and actual operations stages;

   c.   Unsafe work practices relating to issuing permits for the job in question;

---

[1] If it is determined that the Jones Act and General Maritime law does not apply to this case, Plaintiffs bring claims under Louisiana law. Specifically, Plaintiffs invoke, in the alternative, the doctrine of substantial certainty under Louisiana law as an exception to the workers' compensation exclusive remedy doctrine.

d.  Unsafe work practices relating to requiring Plaintiff and other workers to work at dangerous heights on unstable equipment;

e.  Unsafe work practices relating to planning the job in question;

f.  Failure to approve of an adequate JSA for the job in question as required under OCSLA and under Jones Act and General Maritime industry standards;

g.  Failure to have adequate safety precautions in place in the event of equipment failure and/or collapse;

h.  Failure to ensure appropriate and available crane/lifting equipment was utilized in the underlying job;

i.  Failure to adequately inspect equipment prior to requiring Mr. Blanchard work at heights while attached to such equipment;

j.  Failure to perform an adequate hazard assessment for the job in question;

k.  Failure to properly supervise the job in question;

l.  Failure to have adequate policies and procedures for the job in question;

m.  Failure to adequately inspect the equipment in question that fell into the ocean;

n.  Failure to exercise stop work authority;

o.  Failure to honor stop work authority;

p.  Failure to identify safer means to inspect the equipment;

q.  Failure to warn and advise Mr. Blanchard of the risks relating to the job in question;

r.  Failure to configure the equipment in a safe manner to allow Mr. Blanchard to be able to work at heights safely;

s.  Failure to provide adequate safety equipment;

t.  Failure to provide a safe working environment;

u.  Instructing Mr. Blanchard and other SBS workers to perform work in an unsafe manner;

v.  Instructing and/or authorizing the Mr. Blanchard to perform work in an unsafe manner;

w.  Failure to warn Mr. Blanchard of hidden dangers;

x.  Violation of applicable rules and regulations, including but not limited to United States Coast Guard Regulations; and

y.  Other acts deemed negligent, reckless, and substantially certain to cause injury or death.

15.  Additionally, and in the alternative, the incident sued hereupon was substantially certain to occur. The dangerous nature and manner of work being performed made it substantially certain that the equipment would collapse and/or fail while Mr. Blanchard

4

was tied off to the equipment. Further, the Defendant SBS—as a contractor was hired to perform the work in question—knew of the substantial dangers with sending Mr. Blanchard to work at great heights while tied off to dangerous equipment that was not adequately secured or inspected, and knew that an incident of this sort was substantially certain to occur yet proceeded, nevertheless. Specifically, some of the non-exclusive reasons this incident was substantially certain to occur are:

    a. This type of incident should never occur with adequate job plaining and pre-job assessments.

    b. SBS owed a non-delegable duty to Mr. Blanchard to keep him safe and provide him with a safe work environment.

    c. By working on raised equipment at heights in the ocean without adequate inspections, planning, and safety measures, the type of incident that occurred is completely foreseeable and would occur only in a matter of time.

    d. The conditions Mr. Blanchard was working in created an environment where it was not an "if" the incident would occur but a "when" the incident would occur based on the extreme levels of risk.

    e. When working offshore at heights all efforts should be taken to minimize the amount of height workers are subject to. That was not adequately done in this case.

    f. Upon information and belief, SBS had previous issues with the same equipment and continued with the work consciously and without rectifying the previous issues relating to the support of the equipment in question that eventually fell into the ocean. Specifically, SBS knew that there was a near-certain likelihood of the equipment failing and falling and proceeded with the work with a total disregard for the safety of Mr. Blanchard.

    g. SBS knew of all of these risks, yet proceeded with the work, placing Mr. Blanchard in a position where it was only a matter of time before an incident like this occurred causing serious injury or death.

16. Defendant SBS owed a duty consistent with the foregoing and breached each of the foregoing duties. These breaches were the proximate, contributing, and legal cause of Mr. Blanchard's injuries and death. As a result of Defendant SBS' negligence and conduct that made this incident substantially certain to occur, Mr. Blanchard suffered severe physical injury, resulting in his death. Mrs. Blanchard was the wife of Mr. Blanchard and is entitled to recover Mr. Blanchard's damages via the survival action established LA. CIV. CODE art. 2315.1. Plaintiff is also entitled to recover for the death of Mr. Blanchard via the wrongful death action established in LA. CIV. CODE art. 2315.2.

17.    Defendant Kinsale Insurance Company is also liable for all of the aforementioned conduct of Defendant SBS because at all material times Kinsale Insurance Company provided a policy of liability insurance that covered Defendant SBS for the underlying incident and the underlying wrongful conduct.

**VI.**

**PRAYER FOR RELIEF**

18.    As a direct and proximate result of Defendants' conduct, Mr. Blanchard suffered severe and permanent injuries which caused his death. Plaintiff, as tutrix for Mr. Blanchard's minor child, W.B., brings this action for Mr. Blanchard's pre-death damages, which include, but are not limited to, physical pain and suffering, mental pain, anguish, and distress, loss of enjoyment of life, impairment, loss of earnings, and medical expenses.

19.    Plaintiff, as tutrix for Mr. Blanchard's minor child, W.B., also seeks recovery of W.B.'s damages resulting from Mr. Blanchard's death, including, but not limited to, damages for loss of love, affection, consortium, society, companionship, care, nurture, guidance, monetary support, and for medical and funeral expenses.

20.    WHEREFORE, Plaintiffs pray that Defendants be cited to appear and answer this Complaint and that after due proceedings be had, that there be relief and judgment entered herein against Defendants as pleaded above and as follows:

     a.  Compensatory damages against Defendants;

     b.  Actual damages;

     c.  Consequential damages;

     d.  Pain and suffering;

     e.  Past and future mental anguish;

     f.  Impairment;

     g.  Past and future economic loss;

     h.  Interest on damages (pre- and post-judgment) in accordance with the law;

     i.  Recoverable court costs; and

     j.  Such other and further relief as the Court may deem just and proper.

## VII.

### RESERVATION OF RIGHTS

21.     Plaintiffs reserve the right to prove the amount of damages at trial and to amend

this Complaint to add additional claims upon further discovery and as investigation continues.

## VIII.

### JURY TRIAL DEMAND

22.     Plaintiffs hereby demand a trial by jury.

Respectfully Submitted,

ARNOLD & ITKIN LLP

Roland Christensen
La. Bar No. 37440
rchristensen@arnolditkin.com
6009 Memorial Drive
Houston, Texas 77007
Tel.  713.222.3800
Fax. 713.222.3850


CLAYTON, FRUGÈ & WARD
A.M. "Tony" Clayton (#21191)
Michael P. Frugè (#26287)
Richard J. Ward, III (#32267)
3741 La. Highway 1 South
Port Allen, Louisiana 70767
Tel: 225.344.7000
Fax: 225.383.7631

**ATTORNEYS FOR PLAINTIFFS**

**PLEASE SERVE CITATION, PETITION FOR DAMAGES, REQUEST FOR
NOTICE, INTERROGATORIES, REQUESTS FOR ADMISSION, AND REQUESTS
FOR PRODUCTION OF DOCUMENTS ON:**

**SBS**

Through its registered agent:
William Sheffield
72030 Live Oak Street
Covington, Louisiana 70433

**KINSALE INSURANCE COMPANY [LONG-ARM SERVICE]**
Through any officer or director at:
425 West Capital Street, Suite 1800
Little Rock, AR 72201

EAST BATON ROUGE PARISH
Filed Feb 06, 2024 10:01 AM
Deputy Clerk of Court
E-File Received Feb 05, 2024 10:21 AM

C-743798
23

_____ JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE,

STATE OF LOUISIANA

NO._____                                                    DIVISION_____

**LACI N. BLANCHARD,**
**Individually, and as next friend of W.B., the surviving minor child of**
**Ronnie P. Blanchard, Jr.,**

VERSUS

**SBS ENERGY SERVICES, LLC and KINSALE INSURANCE COMPANY**

FILED:_____

_____
DEPUTY CLERK

### **REQUEST FOR NOTICE**

TO:    Clerk of Court
       East Baton Rouge Parish
       P.O. Box 1991
       Baton Rouge, LA  70821-1991

       Please take notice that the undersigned hereby requests written notice of the date set for

trial of the above-numbered and entitled cause as well as notice of hearings (whether on merits or

otherwise), orders, judgments and interlocutory decrees, and any and all formal steps taken by the

parties herein, the Judge or any member of Court, as provided in Louisiana Code of Civil Procedure

of 1960, particularly Articles 1572, 1913 and 1914.

                              Respectfully Submitted,

                              ARNOLD & ITKIN LLP

                              _____
                              Roland Christensen, Roll #37440
                              rchristensen@arnolditkin.com
                              6009 Memorial Drive
                              Houston, TX  77007
                              Tel: 713.222.3800
                              Fax: 713.222.3850
                              **e-service@arnolditkin.com**

                              CLAYTON, FRUGÈ & WARD
                              A.M. "Tony" Clayton (#21191)
                              Michael P. Frugè (#26287)
                              Richard J. Ward, III (#32267)
                              3741 La. Highway 1 South
                              Port Allen, Louisiana 70767
                              Tel: 225.344.7000
                              Fax: 225.383.7631
                              **ATTORNEYS FOR PLAINTIFFS**

EAST BATON ROUGE PARISH
Filed Feb 06, 2024 10:01 AM
Deputy Clerk of Court
E-File Received Feb 05, 2024 10:21 AM

C-743798
23

Case 2:24-cv-00534-LMA-DPC   Document 7-1   Filed 03/18/24   Page 10 of 35

_____ JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE,

STATE OF LOUISIANA

NO._____                                                   DIVISION_____

**LACI N. BLANCHARD,**
**Individually, and as next friend of W.B., the surviving minor child of**
**Ronnie P. Blanchard, Jr.,**

VERSUS

**SBS ENERGY SERVICES, LLC and KINSALE INSURANCE COMPANY**

FILED:_____                              _____
                                                 DEPUTY CLERK

### JURY ORDER

It is ordered that Plaintiff, Laci N. Blanchard, Individually, and as next friend of W.B., the surviving minor child of Ronnie P. Blanchard, Jr., be and is hereby granted a trial by jury on all issues, conditioned upon a posting of bond for furnishing security in the amount of $_____ dollars.  The bond/or security is to be deposited with the Clerk of the Court within sixty (60) days prior to trial.

SIGNED this _____day of _____, 2024.

_____
**SEE ORDER BELOW**
DISTRICT JUDGE

**"Let there be a trial by jury in the above**
**referenced matter upon the applicant for**
**jury posting a bond for jury costs in**
**accordance with the local rules of court**
**and pursuant to orders of the court**
**to be made at the pre-trial conference**
**of this matter."**

2/19/2024
_____                _____
**DATE**                    **JUDGE, 19TH JUDICIAL DISTRICT COURT**

EAST BATON ROUGE PARISH
Filed Feb 07, 2024 3:47 PM
Deputy Clerk of Court
E-File Received Feb 06, 2024 12:06 PM

C-743798
23

# ARNOLD & ITKIN

TRIAL LAWYERS

February 6, 2024

**_By E-File and E-Mail_**
Deputy Clerk of The Court
East Baton Rouge Parish
Division 23

> Re:    Cause No. 743798; _Laci N. Blanchard, et al. V. SBS Energy Services, LLC, et al.; East Baton Rouge Parish, Division "23;"Louisiana._

To This Honorable Court:

Plaintiffs respectfully request that the attached document titled "Plaintiffs' First Interrogatories, Requests for Production, and Requests for Admission to Defendants SBS Energy Services, LLC and Kinsale Insurance Company," be served with Citation and Petition for Damages upon the following Defendants:

**SBS**
Through its registered agent:
William Sheffield
72030 Live Oak Street
Covington, Louisiana 70433

**KINSALE INSURANCE COMPANY [LONG-ARM SERVICE]**
Through any officer or director at:
425 West Capital Street, Suite 1800
Little Rock, AR 72201

Sincerely,

_/s/ Macarena Palma_

Legal Secretary

EAST BATON ROUGE PARISH
Filed Feb 07, 2024 3:47 PM
Deputy Clerk of Court
E-File Received Feb 06, 2024 12:06 PM

C-743798
23

Case 2:24-cv-00534-WBV-DPC   Document 7-1   Filed 03/18/24   Page 12 of 35

_____ JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE,

STATE OF LOUISIANA

NO._____                                           DIVISION_____

**LACI N. BLANCHARD,**
**Individually, and as next friend of W.B., the surviving minor child of**
**Ronnie P. Blanchard, Jr.,**

VERSUS

**SBS ENERGY SERVICES, LLC and KINSALE INSURANCE COMPANY**

FILED:_____                                    _____
                                                     DEPUTY CLERK

_____

**PLAINTIFFS' FIRST INTERROGATORIES, REQUESTS FOR PRODUCTION,**
**AND REQUESTS FOR ADMISSION TO DEFENDANTS**
**SBS ENERGY SERVICES, LLC AND KINSALE INSURANCE COMPANY**

_____

**TO:**   **Defendant SBS ENERGY COMPANY, LLC, a Louisiana limited liability**
         **company based in Houma, Louisiana through its registered agent: William**
         **Sheffield at 72030 Live Oak Street, Covington, Louisiana 70433.**

**TO:**   **Defendant KINSALE INSURANCE COMPANY, a foreign insurance company**
         **through any officer or director at its principal place of business: 425 West Capital**
         **Avenue, Suite 1800, Little Rock, Arkansas 72201; or through its Chief Executive**
         **Officer, Michale P. Kehoe, at 2035 Maywill Street, Suite 100, Richmond, Virginia**
         **23230.**

Pursuant to the Louisiana Code of Civil Procedure, Plaintiff Laci Blanchard,

Individually, and as next friend of W.B., surviving minor child of Ronnie P. Blanchard, Jr.,

through the undersigned counsel of record, propounds the following interrogatories, request

for production of documents, and requests for admission to Defendants SBS ENERGY SERVICES, LLC and KINSALE INSURANCE COMPANY.

Defendants are required to answer fully, in writing, and under oath, and provide, or produce for inspection, copying and replication, the things requested, within thirty (30) days after the date of service, to the law offices of ARNOLD & ITKIN LLP, 6009 Memorial Drive, Houston, Texas 77007.

**I.**

<u>**DEFINITIONS AND INSTRUCTIONS**</u>

1. Under the Louisiana Code of Civil Procedure, you are under a duty to amend a prior answer to a discovery request if it obtains information upon the basis of which:

    a. You know that the answer was incorrect when made; or

    b. You know that the answer, though correct when made, is no longer true and the circumstances are such that a failure to amend the answer is in substance a knowing concealment.

2. The terms **"you," "your," "yours", "Defendant"** or **"Defendants"** shall mean, unless otherwise specified in a particular request, the Defendants named in this lawsuit and/or any agent, representative, employee, your insurance providers, their agents, their employees, your attorneys, your accountants, your investigators, or any individual and/or entity action on your behalf.

3. The terms **"document"** or **"documents"** shall mean all documents and tangible things, in the broadest sense allowed under the Louisiana Code of Civil Procedure, and include, but are not limited to, information contained in computer storage and other electronic information retrieval systems, drafts, originals and nonconforming copies which contain deletions, insertions, handwritten notes or comments, however produced or reproduced, or to any other tangible permanent record, and without limitation, shall include, among other things, accident reports, medical reports, work safety logs, employment records, all marketing material, bids, letters, correspondence, records of discussions, conferences, memoranda, notes, telegrams, summaries, telephone logs and records, teletypes, bank checks, bank deposits and withdrawal slips, bank credit and debit memoranda, records, telexes, private wire messages, communications, calendars, diaries, appointment books, agenda of meetings, conversations, schedules, reports, studies, appraisals, analyses, lists, surveys, budgets, financial statements, financial projections, financial calculations, financial audits, contracts, agreements or proposed agreements, confidentiality agreements, periodicals, charts, graphs, interviews, speeches, transcripts, depositions, press releases, brochures, books of account, affidavits, communications with government bodies, invoices, notes and minutes of meetings of Boards of Directors, audit committees, financial committees and executive committees, interoffice communications, results of investigations, working papers, newspaper or magazine articles, records of payments, releases, receipts, computer programs and printouts, maps, blue prints, liftings, tax returns, vouchers, subpoenas, papers similar to any of the foregoing and other writings of every kind and descriptions (whether or not actually used) in your possession, custody or control; and other records of voice recordings, film, tapes, and other data compilations from which information can be obtained whether these are resident on paper or other media such as magnetic, electronic, or optical.

4. You are to produce all documents that are in the possession, control or custody of you or in the possession, control or custody of any attorney for you. This includes, but is not limited to, documents in the possession, custody, control of you, your attorneys, agents, employees, investigators, consultants, and experts, as well as any firm, subsidiary, parent, affiliated, or related entity, and any other entity or business in which you own a controlling interest or over which you exercise control. You are required to use reasonable diligence to locate the documents, including those that are not in your immediate possession. Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession or custody of the document, or the right to secure the document or copy thereof from any person or public or private entity having physical possession thereof.

5. With respect to hard copy or paper production, all documents responsive to this request shall be produced in their original form.

6. All duplicates or copies of documents are to be provided to the extent they have handwriting, additions, or deletions of any kind different from the original documents being produced.

7. Unless otherwise indicated, documents requested by this Document Request are documents referring to, relating to, or prepared during the **last ten years.**

8. This Document Request requires you amend or supplement your production of documents called for by this Document Request.

9. In the event that any document requested has been lost or destroyed, you shall identify such document and, in addition, specify (a) the date of its loss or destruction; (b) the reason for its destruction; (c) the person authorizing its destruction; and (d) the custodian of the document immediately preceding its loss or destruction.

10. Plaintiff(s) requests that you provide a privilege log containing the descriptions specified in Rules for each document not produced because of a claim of privilege. Such descriptions shall specify in writing with respect to each purportedly privileged document, its author(s), recipient(s), nature (e.g. memorandum, letter), date, subject matter, the nature of the claimed privilege and all facts you rely on to support the claim of privilege. Plaintiff(s) requests that you provide such descriptions within fifteen days after service of your response, or responses, to these documents requests.

11. If you object to any part of a document request, you shall produce all documents, or any portions thereof, covered by the request to which you do not object.

12. Responsive Electronically Stored Information ("ESI") shall be produced in native form; that is, in the form in which the information and/or documents were customarily

created, used, and stored by the native application employed by you in the ordinary course of business.

    a.  If it is infeasible or unduly burdensome to produce an item of responsive ESI in its native form, You may produce in a near-native form; that is, in a form in which the item can be imported into the native application without a material loss of content, structure or functionality as compared to the native form. Static image production formats serve as near-native alternatives only for documents that are natively static images (i.e., photographs and scans).

    b.  The table below supplies examples of native or near-native forms in which specific types of ESI should be produced:

| SOURCE ESI | NATIVE FORM(S) SOUGHT |
|---|---|
| Microsoft Word documents | .DOC, .DOCX |
| Microsoft Excel Spreadsheets | .XLS, .XLSX |
| Microsoft PowerPoint Presentations | .PPT, .PPTX |
| Microsoft Access Databases | .MDB, .ACCDB |
| WordPerfect documents | .WPD |
| Adobe Acrobat Documents | .PDF |
| Photographs | .JPG, .PDF |
| E-mail | Messages should be produced in a form or forms that readily support import into standard e-mail client programs; that is, the form of production should adhere to the conventions set out in RFC 5322 (the internet e-mail standard).<br><br>For Microsoft Exchange or Outlook messaging, .PST format will suffice. Single message production formats like .MSG or .EML may be furnished, if source foldering data is preserved and produced.<br><br>For Lotus Notes mail, furnish .NSF files or convert to .PST.<br><br>If your workflow requires that attachments be extracted and produced separately from transmitting messages, attachments should be produced in their native forms with parent/child |

| | relationships to the message and container(s) preserved and produced in a delimited text file. |
|---|---|

c.  You need only produce reports from databases that can be generated in the ordinary course of business (i.e., without specialized programming skills), and these shall be produced in a delimited electronic format preserving field and record structures and names. The parties will meet and confer regarding programmatic database productions as necessary.

d.  Individual documents requiring redaction shall (as feasible) be redacted natively or produced in .PDF format and redacted using the Adobe Acrobat redaction feature. Redactions shall not be accomplished in a manner that serves to downgrade the ability to electronically search the un-redacted portions of the item.

e.  You need not produce identical documents in more than one form and shall globally de-duplicate identical items across custodians using each document's unique MD5 hash value. The content, metadata and utility of a document must all be considered in determining whether documents are identical, and items reflecting different information shall not be deemed identical.

f.  Production should be made using appropriate electronic media of your choosing provided that the production media chosen not impose an undue burden or expense upon Plaintiff(s) or Plaintiff(s)' counsel as recipients. You must, contemporaneously with production, supply decryption credentials and passwords to the receiving party for all items produced in an encrypted or password-protected form.

g.  Each document produced shall be uniquely identified by naming the item to correspond to a Bates identifier according to the following protocol:

   i.   The first fourteen (14) characters of the filename will reflect a unique alphanumeric designation identifying the party making production and the case;

   ii.  The next ten (10) characters, beginning with an underscore, will be a unique, consecutive numeric value assigned to the item by the producing party. This value shall be padded with leading zeroes as needed to preserve its length;

   iii. The final five (5) characters are reserved to a sequence beginning with a dash (-) followed by a four digit number reflecting pagination of the item when printed to paper or converted to an image format for use in proceedings or when attached as exhibits to pleadings.

iv. By way of example, a Microsoft Word document produced by Acme Corporation in its native format might be named: ACME_VMESHSDCA_000000123.docx. Were the document printed out for use in deposition, page six of the printed item must be embossed with the unique identifier ACME_VMESHSDCA_000000123-0006.

h. Documents designated Confidential may, at your option:

i. Be separately produced on electronic production media prominently labeled to identify the contents as confidential; or, alternatively,

ii. Each such designated document shall have appended to the file's name (immediately following its Bates identifier) the following protective legend:~CONFIDENTIAL-SUBJ_TO_PROTECTIVE_ORDER_IN_ CAUSE_MDL-14-0123

i. You shall furnish a delimited load file supplying the metadata field values listed below for each document produced (to the extent the values exist and as applicable):

| **FIELD** |
| --- |
| BeginBates |
| EndBates |
| BeginAttach |
| EndAttach |
| Custodian/Source |
| Source File Name |
| Source File Path |
| From/Author |
| To |
| CC |
| BCC |
| Date Sent |
| Time Sent |
| Subject/Title |
| Last Modified Date |
| Last Modified Time |
| DOCUMENT Type |
| Redacted Flag (yes/no) |
| Hidden Content/Embedded Objects Flag (yes/no) |
| Confidential flag (yes/no) |

| MD5 Hash value |
| --- |
| Hash De-Duplicated Instances (by full path) |

j.  Each production should include a cross-reference load file that correlates the various files, images, metadata field values and searchable text produced.

k.  Respond to each request for production by listing the unique identifier (Bates-style) numbers/ranges of responsive documents produced.

l.  If any document to be produced has been lost, discarded, transferred to another person or entity, destroyed, or otherwise disposed of, please set forth in writing: (1) the date, name and subject matter of the document; (2) the name, employment and title of each person who prepared, received, reviewed, or had possession, custody, or control of the document; (3) all persons with knowledge of the contents or any portion of the contents of the document; (4) the previous location of the document; (5) the date of disposal or transfer of the document; (6) the reason for disposal or transfer of the document; and, if applicable, (7) the manner of disposal of the document; or, if applicable, (8) the names and addresses of the transferees of the document.

m.  It is required that all documents and/or other data compilations which might impact on the subject matter of this litigation be preserved and that any ongoing process of documents destruction involving such documents cease. In those instances where document destruction has already taken place, it is requested that the documents that would have been relevant to the following discovery request be identified as well as the date of destruction and the individual authorizing, ordering and/or carrying out the destruction.

n.  If you believe that a complete response to any request would require the disclosure of confidential health information, the disclosure of which you believe is prohibited by the Health Insurance Portability and Accountability Act (HIPAA) or other law, Plaintiffs will accept responses that are redacted to comply with such law but that are otherwise complete. Plaintiffs expressly reserve the right to challenge any such redaction.

o.  Your response to each Request for Production should include the unique identifier numbers/ranges that identify the documents responsive to that particular request. For instance, if, in response to Request for Production No. 3, You are producing 50 documents, your response should identify the unique identifier numbers for those 50 documents.

13. The terms "**and/or**", "**or**", and "**and**" are used inclusively, not exclusively.

14. The singular includes the plural number, and vice versa. The masculine includes the feminine and neuter gender. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

15. The terms "**identify**" or "**identity**" when used herein means:

    a.  With respect to a **<u>natural person</u>**, all that you know or that you can determine about his or her full name or names, title, present or last known employer or job description, and present or last known home and business addresses.

    b.  With respect to an **<u>entity or organization which is not a natural person</u>**, all that you know or that you can determine about its full name or names, dates and places of formation, principal places of business, and business addresses.

    c.  With respect to **<u>documents</u>**, all that you know or that you can determine about title, type of documents, date, author, addressee, recipients, any identifying numbers on such documents, substance of its contents, subject matter, present location, present custodian, and each person who has possession, custody, or control over each copy of each document.

    d.  With respect to a **<u>physical object</u>**, all that you know or that you can determine about its common name, identifying number(s), manufacturer and date of manufacture of the object.

    e.  With respect to an **<u>event</u>**, all that you know or can determine about the date, time, place, participants, actions taken, and results obtained.

16. The terms "**custodial document**", "**custodial documents**", "**custodial file**", or "**custodial files**" shall mean all documents maintained by your current employees and past employees (while they were employed). For example, custodial documents include each document on and/or in an individual employee's computer, voice mail, office desk, office filing cabinet or storage system, file storage maintained by that person outside of his/her office, and any other location in which that employee keeps or kept documents. If you have failed to preserve or no longer have custodial documents for any current or past employee implicated by these Requests, please comply with Instruction 5 above.

17. The terms "**communication**" or "**communications**" includes, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer, or exchange of information of any nature whatsoever, by or to whomever, whether oral, written, or face-to-face, by telephone, U.S. mail, personal delivery, electronic mail, computer, or otherwise, specifically including, without limitation, correspondence, conversations, dialogue, discussions, interviews, consultations, agreements, and other understandings.

18. The term "**information**" should be construed in the broadest possible sense. It is intended reference both facts and applicable principles. This term should not be construed to be limited by any method of acquisition or compilation and should, therefore, be construed to include oral information as well as documents.

19. The terms "**person**" or "**persons**" includes, without limitation, a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

20. The terms "**entity**" or "**entities**" includes, without limitation, any corporation, corporate form (such as a limited partnership, limited liability partnership, or limited liability company), parent company, affiliate, subsidiary, partner, member, venture, partnership, or any other structure (or a chain of successive entities) that conducts business, has conducted business, or anticipates conducting business.

21. The terms "**expert**", "**experts**", "**expert witness**", or "**expert witnesses**" shall mean any person or entity who may be called upon as an expert witness at trial and any person or entity used for consultation who is not expected to be called as a witness at trial, but whose opinions, work product, or mental impressions have been reviewed or relied upon by a testifying expert.

22. The terms "**concerning**" or "**relating to**" shall mean referring to, reflecting or related in any manner, logically, factually, indirectly or directly to the matter discussed.

23. The terms "**describe**" or "**describing**" when used in reference to any documents or tangible evidence includes, without limitation, stating the title or name, date, time, author of documents, the common name, identifying number, manufacturer and date of manufacture of any object and the name and address of the person(s) having possession, custody, or control of such at the present time.

24. The terms "**evidencing**" shall mean constituting, reflecting, memorializing, referring to and/or supporting – logically, factually, indirectly or directly – the matter discussed.

25. The term "**damages**" shall mean all claims for relief alleged by Plaintiff(s) in the latest Complaint.

26. The terms "**Accident**", "**Incident**", "**Occurrence**", or "**Underlying Incident**" shall mean, unless otherwise indicated, the events which give rise to this lawsuit.

27. The term "**Similar Instance**" shall mean other instances of personnel either being injured or dying from similar work as was occurring during the Underlying Incident.

28. The terms "**JSA**", "**JHA**", "**job safety analysis**", or "**job hazard analysis**" include without limitation, all safety meeting minutes, reports, handouts, documents, or other related materials.

29. The Term "**Coast Guard Regulation** or **CCR**" refers to the United States Coast Guard, including but not limited to their safety regulations, policies, inspections and investigations.

30. The term "**BSEE**" refers to the Bureau of Safety and Environmental Enforcement, including but not limited to their safety regulations, policies, inspections and investigations.

31. The term "**SBS**" shall refer to Defendant SBS ENERGY SERVICES, LLC and its employees or agents.

32. The term "**Kinsale**" shall refer to Defendant KINSALE INSURANCE COMPANY and its employees or agents.

33. **If you have any objections such as vague, overbroad, etc., please do not object. Instead, call me and I will try to take into account your objections and specific concerns in hopes of working such disputes out amicably.**

## I.

### INTERROGATORIES

1. Please explain how the underlying incident occurred.

2. Please describe what equipment failed to function as intended during the Underlying Incident.

3. Please explain Your involvement in the Underlying Incident.

4. Were any individuals or companies other than those named in this current litigation involved in any manner in the incident made the basis of this suit? If your answer is in the affirmative, identify said individuals and/or companies and plainly state their involvement.

5. Please identify any and all person(s) known to you to have knowledge of the relevant facts upon which this lawsuit is based. For each person please identify the following:

   a. Name
   b. Whether the individual is represented by counsel and the identity of counsel
   c. Phone number
   d. Address
   e. Summary of relevant knowledge

6. Please describe the Your relationship (contractual, functional, or otherwise) with any of the other companies who were involved with the underlying incident or the death of Mr. Blanchard.

7. If You contend that any of the Mr. Blanchard was not Jones Act seaman, please identify the factual basis for such contention.

8. If You claim that the incident resulted from Mr. Blanchard's own contributory negligence, fault, lack of care, inattention to duties, or failure to take ordinary precautions commensurate with their own safety, please set forth fully and specifically the facts upon which you rely for those claims.

9. Have you investigated—either formally or informally—as to the cause or causes of the incident in question? If your answer is in the affirmative, identify each and every person conducting said investigation(s), the date(s) on which said investigation(s) were performed, who was present during said investigation(s), the results of such investigation, and the transmission of the results of the investigation to any other person.

10. Do you possess any statements, whether signed or unsigned, written or otherwise,

concerning facts relating to the incident made the basis of this lawsuit or the injuries therefrom? If your answer is "yes", identify each person from whom you possess a statement; state when and where each and every statement or statements were taken; and identify the person who took each such statement and by whom each person was employed at the time such statement was taken.

11.   If you contend that the incident in question, or the injuries allegedly resulting therefrom, were caused in whole or in part by a pre-existing physical condition of the Mr. Blanchard, identify each such condition, and describe how each contributed thereto.

12.   Do You have any policies or procedures relating to the work occurring at the time of the incident? If so, please identify those procedures by name.

13.   Do You believe any party to this lawsuit or any third party violated a policy, procedure, industry standard, regulation, or similar, that caused the underlying incident (even in part), please identify the party and the policy, procedure, industry standard, regulation, or similar that You contend was violated.

14.   For any insuring or indemnity agreement to which You are a party that could provide coverage or indemnity for liability arising from the Incident, please provide the following information:
   a.   Describe the applicable primary limits of such policy;
   b.   Describe the applicable excess or umbrella limits of such policy;
   c.   State whether You are being indemnified by any other party to this case or another third party with regard to the underlying incident;
   d.   If You are being indemnified or indemnifying, please state who You are being indemnified by or who You are indemnifying and the terms and extent of such indemnity;
   e.   State whether You have been provided (or have provided other parties) with any reservations of rights letters applicable to the underlying incident.

## II.

### R<small>EQUESTS FOR</small> P<small>RODUCTION</small>

### A. Insurance Coverage:

1. Produce copies of all policies of insurance that cover the occurrences in question, including but not limited to general liability coverage(s), and excess coverage(s), which were in effect on the date of the accident made the basis of this suit.

2. Produce all correspondence and any other related documents by and between You and their respective insurance companies (and also between You, or third parties and their respective insurance companies) which in any way relates to, directly or indirectly, coverage for Plaitiff's injuries and damages arising out of the accident made the basis of this suit.

3. Produce all correspondence between You (or other parties not named in this lawsuit) that relate to indemnity or reservation of rights with regard to the underlying incident. Specifically, produce all communications relating to reservations of rights or indemnity for the underlying incident.

4. Produce documents showing the extent of any indemnity agreements or obligations (either where You or Your insurers are providing indemnity to others or being provided indemnity from others) for any claims in this litigation.

5. Produce all correspondence and/or any other related documents from any 3rd party administrator which in any way relates, directly or indirectly, to coverage for Plaintiffs' injuries and damages arising out of the accident made the basis of this suit.

6. Produce any contracts that you have with other firms, groups, companies or organizations that administer insurance benefits on your behalf to any Personal Injury Claimants from this Incident.

### B. The Incident in Question:

7. Produce copies of all incidents and/or accident reports relating, referencing, or concerning the incident made the basis of this suit. This specifically includes all final and/or draft root cause analysis and/or reports relating to the accident in question, prepared by Petitioners, their agents, or any third party.

8. Produce Your entire investigation file for the Underlying Incident.

9.     Produce copies of all federal, county, city, state, police, or other government reports and/or investigations concerning or regarding the accident made the basis of this suit.

10.    Produce any photographs or videos in Your possession relating to the underlying incident.

11.    Produce any communications with BSEE or the USCG relating to the Underlying Incident.

12.    Produce copies of all objects, photographs, drawings, reports, statements, or otherwise described documents or objects in possession of You in reference to the accident. This specifically includes any and all reports and written or electronically recorded statements made by You to any other person, organization or governmental entity.

13.    Produce copies of all correspondence between you and any other person concerning the accident in question. This includes but is not limited to communications between Plaintiffs and other claimants in this litigation and also governmental agencies.

14.    Produce all witness statements relating to, referencing, or concerning the accident in question.

15.    Produce and all written or recorded statements, including but not limited to witness statements, and summaries thereof, given or taken by any person in connection with the incident or the filing of this suit.

16.    Produce all photographs, videos, drawings, diagrams, reconstructions, or other depictions of the accident scene, Plaintiff(s), the Vessel involved in the incident, or other relevant objects that concern the accident in question.

17.    Produce all correspondence, fax, memoranda, invoices, contracts, telephone messages, text messages, instant messages (Microsoft Teams, Facebook Messenger, Google Chat, WhatsApp, or similar) and/or email by and between You and any and all parties to this case or third parties which in any way concerns, refers to, or relates to the Incident in question.

18.    Produce all reports and written or electronically recorded statements made by You to any other person, organization, entity, or governmental or regulatory agency or authority.

19.    Produce the entire investigation file of You, or its agents and/or representatives, prepared or assimilated prior to the date of filing of this lawsuit that relates to the accident question, the decedent, Plaintiffs, and/or Plaintiffs' claims, injuries, and/or damages made the basis of this suit.

20.   Produce all documents which identify the members or participants in any accident investigation or root cause determination performed by You or at Your request.

21.   Produce a copy of the employment file of anyone written up as a result of the events underlying this lawsuit. Please redact any sensitive personal information like social security numbers or similar.

22.   Produce all policies, procedures, rules, or training materials (including manuals, presentations, and videos) that You used to train any of your employees or contractors who were involved in the Underlying Incident.

23.   Produce all documents, contracts, correspondence and/or notes that concern, refer to, or reflect potential parties to this action and persons with knowledge of relevant facts.

24.   Produce all contracts between You and any other party relating to the work that was occurring at the time of the Underlying Incident.

25.   Produce all internal emails or correspondence that concern, refer or relate to the Underlying Incident or Plaintiff.

26.   Produce all videos taken after the incident (informally or formally) by any person with their phone, video, ipad, or other device that relate in any way to the incident.

**C. Policies, Procedures, and Training:**

27.   Produce copies of any policies, procedures, training, or similar relating to any of the following items:

  a.   Anything relating to the work occurring at the time of the Underlying Incident;

  b.   Incident investigation;

  c.   Document retention;

28.   If You contend that anyone involved in the Underlying Incident violated any relevant policies or procedures, please produce such policies or procedures.

29.   Produce Your Safety Management System.

30.   Produce Your employee handbook.

31.   Produce any policy, procedure, training, or similar that You contend You complied with in the Underlying Incident. This request is limited to those policies and procedures

that You contend are relevant to the Underlying Incident—not unrelated or irrelevant policies or procedures.

32. Produce any policy, procedure, training, or similar that You found was violated in the Underlying Incident.

### D. Documents Relating to Plaintiff(s)

33. Produce copies of all documents obtained through subpoena, third party discovery request, deposition on written questions, or similar for Plaintiff(s). You are on notice that Plaintiff(s) specifically request that any and all responsive documents be produced responsive to this request at least 14 days prior to any deposition of Plaintiff(s). If You do not promptly supplement responsive documents to this request, Plaintiff(s) reserve their right to not answer questions at their depositions on documents that have not been timely produced by You. This request specifically seeks, but is not limited to, the following categories of documents:

    a. Employment files (from current or prior employers);

    b. Medical records relating to the Incident (including medical, billing, insurance, radiology, pharmacy, ambulance, or similar);

    c. Medical records pre-dating the Incident (including medical, billing, insurance, radiology, pharmacy, ambulance, or similar);

    d. Accident, injury, disability reports;

    e. Tax, social security, and/or IRS records;

    f. Disability records;

    g. Workers' compensation records;

    h. Any records or documents relating to Plaintiff(s) in the criminal justice system;

    i. Any previous civil litigation documents (pleadings, depositions, orders). This includes all civil cases, child support cases, divorce or custody cases;

    j. Pre-employment physicals (both before the Incident and after the Incident);

    k. Payroll records;

    l. Unemployment records.

34. Produce all documents that concern, refer to, or relate to Plaintiff(s).

35. Produce copies of all documents concerning communications between you and

Plaintiffs.

36.    Produce all surveillance of the Plaintiffs regardless of the medium. Please also produce all invoices, correspondence, or payments made to the party or parties performing the surveillance. This includes, but is not limited to the following surveillance related documents:

    a.  Social media surveillance;

    b.  Surveillance by a private investigator;

    c.  Videos and photographs (in raw, unedited form).

37.    Produce all accident, injury, disability, or injury reports concerning the underlying events of this lawsuit, whether signed by Plaintiff(s) or not, that concern events giving rise to this lawsuit.

38.    Produce all emails or documents that concern, refer, or relate to the Plaintiffs' treating physician and Plaintiffs' treatment.

39.    Produce all emails or documents that concern, refer, or relate to Plaintiffs' and his/her counsel.

40.    Produce any documents showing a waiver of subrogation that you possess for benefits Plaintiff received.

41.    Produce the entire Marine Index Bureau Report on Plaintiff(s).

42.    Produce all U.S. Coast Guard discharges you possess on the Plaintiff.

43.    Produce all records of work being performed by Plaintiff at the time of the Underlying Incident, including but not limited to personnel files and copies of payroll checks, front and back.

44.    Produce copies of any statements given to You by Plaintiff or statements given by or otherwise obtained by You from Plaintiff.

**E.** **Expert Witnesses:**

45.    For any experts You have hired to testify in this action, please produce the entire expert witness file for each witness, including the following:

    a.  Reports;

    b.  Draft reports;

    c.  Notes;

d.  Any assumptions provided to the expert to rely on for testifying;

e.  Rate sheets showing the amount the expert charges for his/her services;

f.  All invoices;

g.  All documents relied on by the expert in forming his/her opinions (other than those produced with bates numbers in this litigation);

h.  Any publications (or similar) the expert witness relies on to form his/her opinions;

i.  The expert's resume or CV;

j.  The expert's testimony list; and

k.  Any demonstratives the expert intends to use at trial.

**F.  <u>Other Document Requests:</u>**

46.  Produce all documents which you have been asked to identify and/or to which you have referred or identified in your responses to Plaintiff's Interrogatories to you.

47.  Produce all documents supporting any defenses (affirmative or otherwise) raised by you to the allegations set forth in Plaintiff's live pleading.

48.  Produce all documents evidencing the extent of damage, either physical or monetary, to Plaintiff.

49.  Produce a privilege log describing all information and/or materials you are withholding with enough specificity to assess the applicability of the privilege(s) being claimed.

50.  Produce any and all documents reflecting a joint defense agreement between you and any other Petitioners.

51.  Produce any policies, memorandums, letters, or any other written material that would detail your document preservation and/or retention policy.

## III.

### REQUESTS FOR ADMISSION

1. Admit you have been correctly named in Plaintiff's most recent Petition.

2. Admit that You do not know of any other parties other than named as Defendants in this lawsuit that may have contributed to the Incident.

3. Admit You have been properly served as a party Defendant(s).

4. Admit that venue is proper.

5. Admit that this is a convenient forum.

6. Admit that You are subject to the general jurisdiction of the court where this action was filed.

7. Admit that You are subject to the specific jurisdiction of the court where this action was filed.

8. Admit that SBS is a citizen of the state in which this this suit was brought.

9. Admit that all SBS planning for the job of incident was done in the state of Louisiana.

10. Admit that all SBS equipment and personnel involved in the incident were dispatched from the state of Louisiana.

11. Admit that all SBS personnel who were on site during the job of incident are Louisiana residents.

12. Admit that all SBS personnel who were involved in the job of incident were trained in Louisiana.

13. Admit that You have no basis in law or fact to argue statute of limitations or timeliness of Plaintiff's claims as a defense in this lawsuit.

14. Admit that You have no evidence to support as an affirmative defense, comparative or contributory negligence of the Plaintiff in connection with any of Plaintiff's claims.

15. Admit that You have no evidence to support as an affirmative defense, that Plaintiff(s) assumed the risks of his/her injuries.

16. Admit that at all material times Kinsale Insurance Company provided a policy of liability insurance that covered Defendant SBS for the underlying incident.

17.     Admit You were covered by a primary policy of insurance which was in effect as of the date of the occurrence forming the basis of Plaintiff's Petition for damages.

18.     Admit Defendant You were covered by an excess/umbrella policy of insurance which was in effect as of the date of the occurrence forming the basis of Plaintiff's Petition for damages.

19.     Admit that another Defendant is indemnifying You for the Incident.

20.     Admit that a third party is indemnifying You for the Incident.

21.     Admit that You have produced full copies (not simply declaration pages) for every primary, excess, umbrella, additional insured, indemnity, or similar insurance policy potentially providing You coverage for the Incident.

22.     Admit that You did not carry workers' compensation insurance on the date of the incident.

23.     Admit that the Incident in question was preventable.

24.     Admit that You received citations from BSEE as a result of the Incident.

25.     Admit that You have video of footage of the Incident.

26.     Admit You have performed any type of surveillance on Plaintiff or Plaintiff's family members.

27.     Admit that Mr. Blanchard was a Jones Act Seaman at the time of the Incident.

28.     Admit that Mr. Blanchard had a substantial connection to a vessel in navigation.

29.     Admit that Mr. Blanchard spent a majority of his time working offshore assigned to the vessel LB SWORDFISH at the time of the Incident.

30.     Admit that Mr. Blanchard was performing work associated with a blowout preventer and pipe jack assembly at the time of the Incident.

31.     Admit that Mr. Blanchard's employment duties contributed to the function of the vessel LB SWORDFISH.

32.     Admit that Mr. Blanchard's employment duties contributed to the accomplishment of the vessel LB SWORDFISH's mission.

33.     Admit that Plaintiffs alleged in their Original Petition that Mr. Blanchard spent a majority of his time working offshore assigned to the vessel LB SWORDFISH at the time of the Incident.

34.    Admit that Plaintiffs alleged in their Original Petition that Mr. Blanchard was performing work associated with a blowout preventer and pipe jack assembly at the time of the Incident.

35.    Admit that you have no basis in law or fact to contend that Plaintiffs have fraudulently plead Mr. Blanchard's Jones Act seaman status.

Respectfully Submitted,

ARNOLD & ITKIN LLP

Roland Christensen
La. Bar No. 37440
rchristensen@arnolditkin.com
6009 Memorial Drive
Houston, Texas 77007
Tel.  713.222.3800
Fax. 713.222.3850

**ATTORNEYS FOR PLAINTIFFS**

**PLEASE SERVE CITATION, PETITION FOR DAMAGES, REQUEST FOR NOTICE, INTERROGATORIES, REQUESTS FOR ADMISSION, AND REQUESTS FOR PRODUCTION OF DOCUMENTS ON:**

**SBS**

Through its registered agent:

William Sheffield

72030 Live Oak Street

Covington, Louisiana 70433


**KINSALE INSURANCE COMPANY [LONG-ARM SERVICE]**

Through any officer or director at:

425 West Capital Street, Suite 1800

Little Rock, AR 72201